### Antonio Garza v. J. J. Terrell, Commissioner.

No. 1503. Decided February 20, 1906.

**School Land—Purchase by Assignee of Entire Lease.**

An assignee of all the lands embraced in a lease of school land except certain tracts which had been sold in 1901, was an assignee of the "entire lease," within the meaning of section 5 of the Act of April 15, 1905, permitting such assignee of the entire lease, out of which no sale of one complement of land had been made under that Act, to purchase, out of his lease, the quantity of land allowed to one purchaser under its provisions. (Pp. 508, 509.)

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*N. A. Rector* and *E. Cartledge*, for relator (*Cornell & Wardlow*, of counsel).—Respondent makes a distinction between the original lessee and the assignee, except in cases where there had been no sale of part of the land out of a lease contract as first or originally made prior to the passage of the Act of 1905. We think the law does not contemplate this distinction, and that the assignee of all of a lease as it remained and was constituted when this Act of 1905 was passed, has the same right and privilege as the lessee.

The language in section of the act above mentioned, bearing on the question here involved, reads: "An original lessee, or the assignee of an entire lease out of which no sale of one complement of land has been made under this act, may purchase out of his lease at any time the quantity of land allowed to one purchaser under the provisions of this act." This language, it seems to us, presupposes that there may have been sales out of leases under some former law or act.

*R. V. Davidson*, Attorney-General, and *W. E. Hawkins*, Assistant, for respondent.—"Entire" is thus defined in Webster's International Dictionary: "Complete in all parts; undivided; undiminished; whole; full and perfect; not deficient; as the entire control of a business; entire confidence, ignorance." Example: "One entire and perfect chryso-

lite."—Shak. This is also the meaning of the word as judicially determined. Houston & T. C. Ry. Co. v. Postal Tel. Cable Co., 18 Texas Civ. App., 502; Haines v. State, 7 Texas Crim. App., 30; Lawrence v. State, 7 Texas Crim. App., 192; Sultan Water & Power Co. v. Weyerhauser Timber Co., 31 Wash., 558; Robertson v. State, 43 Ala., 325; Friezen v. Allemania Fire Insurance Co., 30 Fed. Rep., 352. As used in sec. 5 of this act, an entire lease means a whole, undivided lease as originally executed, which was not at the date of the assignment, if any, wanting or defective in any part, or in anywise restricted or abridged from its original entirety.

The purpose of the Legislature seems to have been to permit the original lessee, or, in case of an assignment of the entire lease, then the assignee thereof, to purchase out of his lease at any time the quantity of land allowed to one purchaser under the provisions of said act, with the single restriction or qualification that there shall have been, at the date of the application for purchase, no sale of one complement of land out of such lease. We presume that this restrictive provision was embodied because the Legislature knew that a great deal of land had theretofore been purchased out of leases with the consent of the original lessee, or of the assignee. Tolleson v. Rogan, 7 Texas Court Reporter, 128; Smith v. McLain, 7 Texas Court Reporter, 562. The Legislature also knew that since the adoption of the act of April 19, 1901, there had been no purchase of any land out of leases by either the original lessee or an assignee. Martin v. Terrell, 8 Texas Court Reporter, 446; Hazelwood v. Rogan, 4 Texas Court Reporter, 381.

Looking to the context to ascertain the meaning of the Legislature, we find the construction of the respondent supported by the fact that in this same section 5, and in the same sentence in which provision is made for purchase by the assignee of an entire lease, provision is also made for purchase by "any bona fide assignee of a part of a lease evidenced by an assignment in writing executed prior to March 17, 1902, and who is in possession of the land under said assignment when this act takes effect," the restriction probably being inserted because, up to the decision in Hazelwood v. Rogan, on March 17, 1902, 4 Texas Court Reporter, 381, assignees of parts of leases may have supposed they had the right to buy out of such leases.

The same sentence also provides that "one who was the assignee of a part of a lease by an instrument in writing executed prior to January 1, 1905, and who was in person a bona fide actual settler thereon on said date, but who did not own all of said lease on that date, may buy at any time one section of land on which he was the owner of the lease."

The use by the Legislature, in the same sentence, of the term an entire lease and the term a part of a lease, in two instances, indicates a discriminating recognition by the legislature of a distinctively different force and meaning of the terms so employed.

Again, in section 7 of the Act of 1905, it is provided that "an original lessee or assignee of an entire leasehold, who was such owner at the date of the termination thereof, shall have a preference to another

lease of the land," etc. Entire leasehold, as used in this act, and as construed in actual practice thereunder by the Commissioner of the General Land Office, simply means all the land held under the lease at the date of expiration thereof. That quantity may be all the land originally embraced in the lease, or only a part of such land. The attention of the court is called to the distinction which the Legislature intended to draw between an entire lease, as used in sec. 5 of this act, and an entire leasehold, as used in section 7 thereof. It thus appears that an entire lease means all the land included in the original lease, while entire leasehold at any fixed date means all the land covered by the lease at that particular date. From the foregoing it seems most reasonable to conclude that the Legislature intended to and did distinguish between an entire lease and a part of a lease, and that respondent's construction of this statute is correct, and that he properly declined to accept relator's application for purchase, and to award to him the land therein described.

GAINES, CHIEF JUSTICE.—This is an original petition for a writ of mandamus to compel the Commissioner of the General Land Office to cause to be inspected, classified and appraised six certain tracts of school land lying in Crockett County, which the relator desires to purchase under the Act of April 15, 1905.

The undisputed facts, as shown by the petition and answer, are that on February 24, 1898, several sections of school land, amounting in the aggregate to 3,520 acres, and embracing five of the tracts in controversy in this suit, and lying in Crockett County, were by the Commissioner of the General Land Office leased to one Charles Schauer for the term of ten years. On February 28, 1901, the Commissioner, with the consent of the lessee, sold out of the lease all the lands embraced therein, except the five tracts just mentioned.

Also on the 10th of June, 1898, the Commissioner of the General Land Office leased to Schauer three other tracts of school land in Crockett County, containing in the aggregate, 1,920 acres, and including one of the tracts in controversy; and on February 28, 1901, he, with the consent of the lessee, sold one of the tracts embraced in that lease, but not that last mentioned.

The rent on both of the leases has been regularly paid, and the leases have ever since they were executed been kept in good standing, save as to the lands which were sold.

On the 16th day of August, 1905, Schauer assigned both leases to the relator; and, on the 19th day of the same month, relator, desiring to purchase the five unsold tracts in the first lease and one of the two in the second, which remained subject to that lease, gave written notice to the Commissioner, specifying the lands he wished to purchase, and requesting him to have the lands inspected and appraised. This the respondent refused to do, for the reason that in his opinion the relator was not "the assignee of an entire lease," within the meaning of those terms as used in section 5 of the act approved April 15, 1905. (Laws 1905, p. 163.) That presents the question in the case.

So much of the section as we are called upon to construe reads as

follows: "An original lessee, or the assignee of an entire lease out of which no sale of one complement of land has been made under this act, may purchase out of his lease at any time the quantity of land allowed to one purchaser under the provisions of this act."

Since the only sales made out of the two leases were made February 28, 1901, it is clear that "no sale has been made of one complement of land under this act," and therefore, if the relator is to be deemed under the facts an assignee of the entire leases, he is entitled to purchase the lands he desires to purchase." That he is not the assignee of the entire original lease is clear; but that he was not the assignee of the entire lease, when the assignment was made, is a very different proposition. Clearly there was no other lessee of any part of the lands after that time. A landlord leases several bodies of land, and with the consent of the lessee withdraws a part and sells them to a third person, the parcels not sold remaining subject to the lease. The lease of the part not sold becomes, in our opinion, the "entire lease," within the meaning of these words as employed in the statute. If a part of the lands subject to the leasehold interest be sublet or assigned, and the remainder be held by the original lessee, or sublet or assigned to another, then neither the first nor second assignee is the assignee of the entire, but the assignee only of the part of a lease.

We therefore conclude that the relator was entitled to purchase the lands in controversy, and that the writ of mandamus should be awarded. It is accordingly so ordered.

*Peremptory mandamus granted.*